IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 2:23-cr-127 |
| v. | |
| COREY WRIGHT, | **DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS** |
|      Defendant. | |

The defendant, Corey Wright ("Mr. Wright"), by counsel, in accordance with United States Sentencing Commission, Guidelines Manual, §6A1.2 (Nov. 2023) and the Sentencing Procedures Order, represents that he has reviewed the presentence investigation report (PSR) prepared by the probation officer, and that he does not have any objections to the facts or the guideline calculations set forth therein.

<u>Application of the Statutory Sentencing Factors to the Facts of this Case</u>

In accordance with 18 U.S.C. § 3553(a) the following factors are presented for consideration in determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1.     The nature and circumstances of the offense and the history and characteristics of the defendant.

(a) <u>Nature and Circumstances of Offense:</u>

Mr. Wright, along with co-defendants Darryl Bond, Clyde Byrd, Akime Porter, Jared Haddock, Holly Triplett, Christopher Eanes, Leo Frueh, Jessica Brunelle, Aimee Yanez, and Lisa Clark, was named in a fifteen-count Indictment returned by an Eastern District of Virginia,

**Prepared by David Michael Good, P.C**.

Norfolk Division, grand jury on October 25, 2023. Count One charges Mr. Wright with Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Methamphetamine, Cocaine, and Fentanyl, in violation of 21 U.S.C. 846, beginning in and around February 2021 and continuing thereafter up to and including the date of the Indictment. Count Seven charges Mr. Wright with Attempted Possession with Intent to Distribute Cocaine, in violation of 21 USC §§ 841(a)(1), (b)(1)(B), and 846, on or about November 15, 2022. Criminal Forfeiture is cited pursuant to 21 U.S.C. § 853 and 28 U.S.C. § 2461(c). PSR ¶ 1.

Mr. Wright was arrested on February 29, 2024, and the Indictment was unsealed as to Mr. Wright on March 1, 2024.[1] On July 2, 2024, in accordance with the terms of a written plea agreement, Mr. Wright appeared before The Honorable Robert J. Krask, United States Magistrate Judge, and pled guilty to Count One of the Indictment. The plea was accepted, and sentencing was set for November 1, 2024, before The Honorable John A. Gibney, Jr., Senior United States District Judge, pending the completion of a presentence report. PSR ¶ 2.

Undersigned counsel met with Mr. Wright the day the government conveyed its plea offer, June 1, 2024, and Mr. Wright directed counsel to notify the government of his acceptance of the offer during that meeting. Aside from Jared Haddock, who pled guilty in January 2024, prior to Mr. Wrights's arrest in this matter, Mr. Wright was the second defendant to plead guilty (Christopher Eanes pled guilty on June 13, 2024, and Mr. Wright on July 2, 2024). All other defendants subsequently pled guilty.

**Prepared by David Michael Good, P.C.**

---

[1] Aside from Jared Haddock, who was arrested in November 2023, all defendants in this case were arrested in February, March, and July, respectively.

UNITED STATES OF AMERICA V. COREY WRIGHT; 2:23-CR-127; DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS - 2

(b) <u>History and Characteristics of the Defendant</u>

Mr. Wright was born and raised in Farmville, Virginia, and he is presently 47 years old. He is the first of two children born to Dennis Watkins and Diane Van Romondt. Dennis Watkins, approximately 69 years of age, was known to reside in Prospect, Virginia, and was employed as an animal warden in Farmville, Virginia. Mr. Wright has had no contact with his father since 1995. While Mr. Wright's father occasionally paid child support to his mother during Mr. Wright's childhood, his father did not visit with Mr. Wright or his sibling. In fact, Mr. Wright knows little about his father, other than the fact that his father had a crack cocaine addiction. PSR ¶¶ 63, 70.

Diane Van Romondt, passed away on March 25, 2016, after an illness. She had "been on disability" from a car accident that occurred when she was 5 years old, which resulted in injuries to her arm and back. Mr. Wright believes that his mother likely struggled with her mental health, though he is unsure if she was ever diagnosed with a mental health disorder. Mr. Wright described his mother to the probation officer in this case as "part gambler, part alcoholic." She married Gerald Van Romondt around 1982, and Mr. Wright considers his stepfather, Mr. Van Romondt, to be his father. Mr. Van Romondt, is in his late sixties, he resides in Farmville, Virginia, and he was employed as a tractor-trailer driver. After Mr. Wright's mother passed away, Mr. Van Romondt remarried, and Mr. Wright has not had contact with him since her death. *Id.*

Mr. Wright has one (full) sibling, his sister Kiley Wright, age 45, who resides in Norfolk, Virginia, and is an information technology technician at Norfolk Naval Base. Mr. Wright described his relationship with his sister as "great" to the probation officer. Additionally, Mr. Wright has 8 half-siblings. Aside from his maternal half-brother, Gerald Van Romondt, Jr., age

**Prepared by David Michael Good, P.C.**

41, Mr. Wright has no contact with his half-siblings (and one is deceased). Mr. Wright maintains

a close relationship with Kiley and Gerald and last had contact with them in May 2024. PSR ¶

64, 65.

Mr. Wright reported to the probation officer that his life has been "rough." He was raised

by his mother and stepfather and reported that his childhood was "not too bad, but not good." His

mother was not able to work, and he had to (effectively) raise his brother and sister. Mr. Wright

pointed out that his mother did what she could, and that if she had cigarettes and alcohol, he and

his siblings were provided for. Mr. Wright got a job at Walmart at age 15 to help provide for his

siblings, as he "did what he had to do" to provide clothes and other support for his siblings. Mr.

Wright, his two siblings, and his mother and stepfather lived in a 3-bedroom "trailer" in

Farmville at Eastgate Trailor Park. Mr. Wright shared a bedroom with his brother. The

neighborhood was well-known for drug dealing. Mr. Wright recalled to the probation officer

periods during his childhood when they went without food and clothing. Mr. Wright's mother

physically struck him as a child, and while he did not describe the beatings he endured as a child

as "abuse," he noted that it would not be considered acceptable today. PSR ¶ 66.

Mr. Wright has fond memories of playing basketball with his sister and playing video

games with both siblings during his childhood, and they also enjoyed playing cards. Their

mother taught Mr. Wright to gamble at a young age. Mr. Wright does not believe that he has a

gambling addiction, though he has struggled with gambling at times. PSR ¶ 67.

During his childhood, Mr. Wright used sports to distance himself from his

neighborhood's illegal activities. His favorite sport was baseball, though he also played

basketball and football during high school. Mr. Wright described himself as a good child to the

probation officer and noted that he did not get into (legal) trouble until he was discharged from

Prepared by David Michael Good, P.C.

the United States Marine Corps. His mother told probation (in a prior PSR) that Mr. Wright was a good child and that he never got in trouble until after he came home from the military. PSR ¶ 68.

Mr. Wright graduated from high school in 1995, and he enlisted in the United States Marine Corps shortly thereafter. After boot camp he was stationed at the Marine Corps base at Twentynine Palms, California, where he remained for 4 years. In 1999, Mr. Wright was discharged after a regrettable destruction of property and dereliction of duty charge. He then moved back to Farmville, Virginia, and in 2002, he moved to Richmond, Virginia. PSR ¶ 69.

Mr. Wright married Sharon Hembrick in 1995, though they divorced in 1999. They served in the United States Marine Corps together, and Mr. Wright's required time in "the field" for extended periods ultimately led to their breakup. They still maintain a good relationship as friends (and co-parents), as they have a child together, Brittany Samone Wright, age 28, who resides in Richmond, Virginia, with her husband and infant child. Brittany is a licensed professional counselor. Mr. Wright paid his child support obligations for his daughter when she was a child. PSR ¶ 71.

Mr. Wright and Leslie Dailey have a son born from their relationship. Isaih Dailey, age 21, is a student at the Virginia Military Institute, after earning a scholarship for Division I baseball. While Mr. Wright and Lesley remained friends and co-parents for Isaiah, they do not talk frequently now that their son is older. PSR ¶ 72.

Mr. Wright and Danyell Banks have one daughter born from their relationship. Diamond Banks, age 20, resides in Richmond, Virginia, and is employed as a home health nurse for seniors. PSR ¶ 73.

Mr. Wright married Crystal Wright around 2017. They had two children, Corryain Wright, age 21, who is a college student and plays basketball at Delaware State University. Tragically, their son, C.W., died at the age of 13, after committing suicide. After this tragic event, their relationship deteriorated, and they grew apart. A divorce petition was filed in the Norfolk Circuit Court on June 24, 2024. PSR ¶ 74.

Mr. Wright and Melissa Miller have one son born from their relationship. L.J.M., who is one year old in October 2024, resides with his mother in North Chesterfield, Virginia. Mr. Wright sees his son daily via Facetime (on jail tablets). Mr. Wright is close to all his children, and he maintains a good relationship with all of them. When he came home after his last period of incarceration all his children, except Isiaih, resided with him. PSR ¶ 75.

Mr. Wright told the probation officer that he has an interest in starting a non-profit organization to work with at-risk youths upon his release from incarceration. Ms. Miller has known Mr. Wright since she was approximately 17 years old, having grown up together for a time in Farmville. Ms. Miller advised the probation officer that after their son was born, Mr. Wright stayed home to care for him. She further reported that since Mr. Wright's incarceration in this matter, it has been "emotionally and financially straining." Ms. Miller additionally said that at the time of his arrest, Mr. Wright was actively working on opening a towing company. PSR ¶ 77.

Ms. Miller told the probation officer that Mr. Wright had a difficult upbringing, and she recalled specific incidents that Mr. Wright had previously shared with her, including that he took on a "father role" to his younger siblings and he often went without his needs being met in order to ensure his siblings had what they needed. Ms. Miller further told probation that Mr. Wright has a toe that is permanently bent from wearing shoes that were too small for him during his

Prepared by David Michael Good, P.C.

childhood, because he would have his mother buy his siblings shoes instead of him, as she could not afford to buy shoes for all the children. Ms. Miller went on to say that Mr. Wright's father was not present in his life and that Mr. Wright and his sister would often be disappointed with their father's empty promises of visits from him. Ms. Miller advised probation that Mr. Wright's current incarceration has made it very difficult for him emotionally and that he "has always been very focused on being there for his son since his father was not there for him." PSR ¶ 78.

Ms. Miller told probation that Mr. Wright has not been the same since his son C.W. died, that Mr. Wright struggles with why his son committed suicide, and that Mr. Wright has not properly grieved. She also stated that Mr. Wright has also had a difficult time since his mother died. Ms. Miller advised probation that she believes Mr. Wright would benefit from grief counseling. PSR ¶ 79.

Mr. Wright is in overall good health, though he suffers from chronic back pain, which is treated with Tylenol. Additionally, while he has no history of diagnosed mental illness, Mr. Wright believes that he suffers from post-traumatic stress disorder (PTSD) and depression (likely) as a result of his military service. He told probation that he has been "too embarrassed to ask for help," though he is ready now and he feels that he would benefit from a mental health evaluation and counseling (and whatever other treatment may be necessary). PSR ¶ 82, 84-85.

Mr. Wright has a long history of substance use and abuse. He used marijuana for approximately 10 years, though he only consumed alcohol on the weekends until he was 21 years old. From the age of 18 to 22, he smoked marijuana twice per month, and by the age of 22 until his prior arrest, he smoked it twice per day. He last used cocaine in 2018 and smoked marijuana daily from 2020 until his arrest. Beginning around 2022, he began using it between two and five times each day. He did not use marijuana between 2015 and 2020. PSR ¶ 87-88.

**Prepared by David Michael Good, P.C.**

Concerning alcohol, Mr. Wright previously consumed alcohol on special occasions or holidays, limiting its use to a few times per year. However, after his son's tragic death, "everything fell apart." After this and including the deterioration of his marriage due to this loss, Mr. Wright began experimenting with other drugs. He would misuse Percocet or use "a line or two" of cocaine. He would go to a bar every day to get away from his home and would consume approximately three beers and "a couple" shots of alcohol. His drinking intensified during or after the COVID-19 pandemic. His drinking decreased after he met his girlfriend, Melissa Miller, around 2022, to one or two beers per day until his arrest on the instant offense. He completed a 40-hour substance abuse program, Narcotics Anonymous, and Alcoholic Anonymous meetings while in Bureau of Prisons custody. PSR ⁋ 89-90.

Probation noted that on June 6, 2018, June 13, 2018, and July 2, 2018, Mr. Wright submitted urine screens which were positive for cocaine use. He was subsequently diagnosed with Cannabis Use Disorder (severe) and Stimulant Use Disorder (mild) and recommended for substance abuse treatment. On January 7, 2019, he successfully completed 20 weeks of outpatient substance abuse treatment at The Counseling Center in Norfolk, Virginia. PSR ⁋§ 91.

As stated, Mr. Wright graduated on June 12, 1995, with his high school diploma from Prince Edward High School in Farmville, Virginia. Additionally, while at the Bureau of Prisons he completed the following educational and vocational courses:

- Anger Management for Parents

- Business Management

- Occupational Safety and Health Administration (OSHA)

- Breaking Barriers

- Exploring Culinary Arts 4

UNITED STATES OF AMERICA V. COREY WRIGHT; 2:23-CR-127; DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS - 8

- Introduction to Screen Writing 3

- Joy of Science

- Plan for Retirement

- Psychology of Release

- Community Release

- Solitary Housing Unit (SHU) Self Study Stress Management

- SHU Self-Study Victim Impact

- Cert Kaskaskia College

- Goal Setting

- Online Job Application

- Job Interview Skills

- Resume Writing Skills

- Job Interest Profiler.

PSR § 92.

Mr. Wright has been incarcerated since his arrest in this matter on February 29, 2024, and, as such, is unemployed. He was employed by various employers prior to this:

- 24/7 Hauling in Virginia Beach, Virginia, from June 12, 2019, until April 2, 2020, earning $4,000.00 per month. Mr. Wright held several positions at this employer, including driver, dispatcher, and customer service representative. He was laid off due to the Covid-19 pandemic. The company confirmed to probation that Mr. Wright was "unfortunately laid off during the Covid -19 pandemic as the company found unprecedented challenges." The company further advised probation that Mr. Wright "exhibited outstanding work attendance, was a reliable

**Prepared by David Michael Good, P.C.**

team member, was a team player, and went above and beyond expectations[]" and that he is "eligible for rehire." PSR ¶ 94.

▪ Bright Futures of Virginia, from January 2018 until May 2019, earning between $300 and $600 per month. Mr. Wright was the office manager, and he was responsible for finding individuals in the community who struggled with severe mental illness and enrolling them in mental health skills building. PSR ¶ 95.

▪ ABC Auction in Virginia Beach, Virginia, from November 30, 2015, until May 9, 2019, earning approximately $2,000 per month. He was a lane leader, with his primary responsibilities being locating cars prior to auctions and putting cars in order for auctions. He "just stopped going" due to his grief after his son's death. PSR ¶ 96.

▪ Double Tree Hotel in Virginia Beach, from October 30, 2015, to March 1, 2016, earning $8.00 per hour as a dish washer. PSR ¶ 97.

▪ Mr. Wright was incarcerated from December 9, 2004, until October 30, 2015, and, as such, was unemployed. PSR ¶ 98.

▪ Painter with his friend in 2000 earning $7 to 10 per hour. PSR ¶ 99.

▪ Hampton Sydney College, as a dishwasher. *Id.*

▪ Walmart. *Id.*

▪ Time Life magazine, as a mail sorter. *Id.*

▪ United States Marine Corps, from 1995 to 1999. He attained the rank of E-4, corporal, though he was reduced in rank at separation. While Mr. Wright was court-martialed after being charged with destruction of property and dereliction of duties, he earned a good conduct medal during his military service. He was assigned to a motor transport unit in the First Tank Battalion at United States Marine Corps base at Twentynine Palms, California. Mr. Wright advised

Prepared by David Michael Good, P.C.

probation that the incident that led to his discharge was an accident – a forklift fell off a truck and that he failed to stop and check the load every 20 minutes, as required. PSR ‖ 100.

The probation officer identified that Mr. Wright has a negative net worth, no liquid assets, no monthly cash flow, and that he is, therefore, neither capable of paying the minimum fine immediately nor does he appear able to pay an additional fine in an amount sufficient to pay the costs of any period of imprisonment or supervision, or any interest on any fine. PSR ‖ 106.

2.      The Need for the Sentence Imposed to Promote Certain Statutory Objectives:

       (A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

       (B) to afford adequate deterrence to criminal conduct

       (C) to protect the public from further crimes of the defendant

       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

3.      The Kinds of Sentences Available

A sentence to a term of incarceration is required, as a sentence of probation is not authorized as the offense is a Class A felony. *See* 18 U.S.C. 3561(a). Additionally, Count One carries a 10-year mandatory minimum sentence.

4.      The Sentencing Range Established by the Sentencing Commission

The advisory guideline range is 235 to 293 months (Total Offense Level: 37, Criminal History Category: II). PSR ‖‖ 107-108.

5.      The Need to Avoid Unwarranted Disparities

| Defendant | Criminal History | Offense Level | Sentence |
|---|---|---|---|
| Malik Dillard | VI | 37 | 360 months |

**Prepared by David Michael Good, P.C.**

| Christopher Eanes | VI | 33 | Range: 235 – 293 |
|---|---|---|---|
| Jared Haddock | VI | 29 | 186 months |
| Sebastian Balthazar (2:23cr65) | I | 24 | 36 months |

## ARGUMENT

Mr. Wright moved with great haste in this case to accept his guilt and to enter a guilty plea pursuant to a plea agreement. He has accepted full responsibility for his actions, and he understands that the Court must impose a sentence in this case.

While offered in mitigation, and not as an excuse for his actions, Mr. Wright deeply regrets his actions in this case – not only for himself but for the strain that it puts on his children and other family members. Mr. Wright is a good person who made a serious mistake by getting involved in the drug trade. Most telling, it is respectfully submitted, in the determination of what sentence is sufficient, but not greater than necessary, is that Mr. Wright had made the decision to get out of the drug trade before his arrest in this matter. While this cannot undo his actions in this matter, it is a strong factor for the Court's consideration of the 18 USC 3553(a) factors, to include §§ (a)(2)(C) "to protect the public from further crimes of the defendant."

Mr. Wright was loving and kind to his siblings during their childhood, and he took on the responsibilities of a parent by seeking employment to pay for clothing and other items for his siblings. He put his siblings before himself, which is a strong indicator of Mr. Wright's core character. Despite a childhood deprived of many things, including food and proper-fitting clothing at times, and despite the effective abandonment by his father and what would now be described as physical abuse from his alcohol and gambling-addicted mother, Mr. Wright graduated from high school. He chose to better himself by enlisting in the U.S. Armed Forces.

Prepared by David Michael Good, P.C.

He did not set out for an easy time in the military – he chose the United States Marine Corps.

While the Marines Corps needs no explanation, it states that its values are:

> VALUES BORN FROM OUR NATION'S IDEALS
> Marines live by a set of enduring core values that form the bedrock
> of our character. These values guide our actions and bolster our
> resolve. Honor, courage and commitment lead us to victory over
> the physical, mental and moral battles faced during combat, or
> while serving in our communities on behalf of our Nation. These
> are the values that ensure every fight in current and future battles
> supports our common moral cause.[2]

Mr. Wright served for four years in the Marine Corps. Unfortunately, he was discharged after being charged with destruction of property and dereliction of duty for something Mr. Wright described as an accident. Damage to a forklift occurred, and while Mr. Wright did not follow through with checking the load every 20 minutes, as instructed, he did not intend for the forklift to be damaged. PSR ⁋ 100.

After his service to the United States, Mr. Wright was employed with numerous employers over many years. Indeed, he has a solid work history. As stated, his last employer, 24/7 Hauling in Virginia Beach, Virginia, told the probation officer that Mr. Wright "exhibited outstanding work attendance, was a reliable team member, was a team player, and went above and beyond expectations. The defendant is eligible for rehire." PSR ⁋ 94 (the quote is taken from the PSR, it is unknown whether it is a direct quote from the employer).

Mr. Wright is a loving father, boyfriend, sibling, and son. He was completely destroyed by his son's tragic suicide, and he is consumed with grief. He loves his children and his girlfriend, Melissa, and they all reciprocate this love. He is also close with his siblings, Kiley

**Prepared by David Michael Good, P.C.**

---

[2] *See* https://www.marines.com/life-as-a-marine/standards/values.html (last viewed October 18, 2024).

UNITED STATES OF AMERICA V. COREY WRIGHT; 2:23-CR-127; DEFENDANT'S POSITION WITH
RESPECT TO SENTENCING FACTORS - 13

and Gerald. As a small demonstrative of his open and obvious love for his family, Mr. Wright has tattoos that include a tombstone for his mother and his deceased son on the left side of his chest, "Before Death," his daughters' names on his left shoulder, a cross on his right shoulder, and "Luv" on his right forearm. PSR ¶¶ 64, 80.

Mr. Wright has a long history of substance use and abuse. He used marijuana multiple times per day from 2020 until his arrest. PSR ¶¶ 87-88. After his son's tragic suicide "everything fell apart." Mr. Wright began drinking heavily and using other drugs, including Percocet and cocaine. PSR ¶ 89. Although he has no prior psychological or psychiatric diagnosis, Mr. Wright likely suffers from PTSD and depression, and extreme grief. He was too embarrassed to seek diagnosis and treatment until his realization that he needs help. PSR ¶ 84.

It is respectfully submitted that something happened for Mr. Wright to go from the person of obvious character, who graduated high school, who worked to take care of his younger siblings during his childhood, who went without things, such as proper-fitting shoes, so that his siblings could be better taken care of, who played sports to get away from the crime-riddled neighborhood, and who chose a branch of the U.S. military after graduating from high school that is well-known for its rigorous nature – to selling drugs. The only apparent answer, it is respectfully submitted, *is mental health and substance abuse*.

In addition to graduating from high school, Mr. Wright completed numerous courses while previously at the Bureau of Prisons. He chose not to sit idly, doing nothing. He wanted to better himself, which is the path he has nearly always taken. His fundamental character is not that of a criminal or a ne'er-do-well. He acknowledges his mistakes and deeply regrets them. Mr. Wright was moving in the right direction prior to his arrest in this case. Unfortunately, it was too late. But at his present age of 47, Mr. Wright is well aware that he must obey the law

**Prepared by David Michael Good, P.C.**

UNITED STATES OF AMERICA V. COREY WRIGHT; 2:23-CR-127; DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS - 14

upon his release from incarceration – and, importantly, he wants to, for many reasons. He has many legitimate talents and skills that he can and will use upon his release.

The question, of course, is what sentence is sufficient, but not greater than necessary to accomplish the directives of 18 USC 3553(a). It is respectfully submitted that a downward variance sentence to a term of imprisonment of 188 months would accomplish § 3553(a)'s directives (this would be a two-level downward variance sentence to the low end of the calculated guideline range). This sentence would be slightly more than 15 and a half years of incarceration, which is a significant sentence. It is a sentence that is sufficient, but not greater than necessary.

While Mr. Wright does have some prior criminal history, including a federal drug conviction from 2005, under the guidelines he is properly scored as Criminal History Category of II. PSR ¶ 108.

In sum, while acknowledging that he made a serious mistake in his involvement in the instant matter, Mr. Wright is a loving father, son, sibling, and boyfriend. His mental health concerns and serious substance abuse issues all likely contributed to his actions in seeking to support his family by selling drugs. He will likely continue to better himself while at the Bureau of Prisons by taking educational courses and vocational training, which he will likely be able to use in seeking employment upon his release. He will also, with this Court's recommendation, receive substantial substance abuse treatment, all of which, it is respectfully submitted, will put him on the right track for supporting his family with a legitimate job. Additionally, he will be on supervised release upon his release from incarceration for 5 years or more, which will include numerous conditions and supervision (including drug testing and employment verification).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).  This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1.  See also *United States v. Nellum*, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing a Report of the U.S. Sentencing Commission, *Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines*, May 2004).

The U.S. Sentencing Commission also released its *Recidivism Among Federal Offenders: A Comprehensive Overview*, March 2016, which summarizes, in part, in its Key Findings that,

> A federal offender's age at time of release into the community was also closely associated with differences in recidivism rates. Offenders released prior to age 21 had the highest rearrest rate, 67.6 percent, while offenders over sixty years old at the time of release had a recidivism rate of 16.0 percent.

Mr. Wright is presently 47 years of age, and the sentence sought is 188 months. This would put Mr. Wright at well over 60 years of age or older upon release. While there would organically be a significantly lower concern for recidivism based on age, as found by Bureau of Prisons research, it is respectfully submitted that Mr. Wright, for all the reasons stated herein, would present an even lower recidivism risk than a normal person in his stead.

It is further respectfully submitted that the guidelines fail to account for the significant

collateral consequences that Mr. Wright, and his children, will suffer as a result of his conviction, namely, the loss of caretaking and financial support to his youngest child, L.J.M., who is one year old.

### Conclusion

For the foregoing reasons, it is respectfully submitted that a downward variance sentence of 188 months' incarceration (the low-end of a two-level downward variance to the advisory guidelines range), 5 years of supervised release, no fine, and a $100.00 special assessment, is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

It if further respectfully requested that the Court recommend to the Bureau of Prisons that Mr. Wright be housed in a facility as close as possible to the Richmond, Virginia area as is reasonable, that he receive a thorough medical examination and treatment, mental health evaluation and treatment, and that he be enrolled in the Residential Drug Abuse Program (RDAP), if eligible.

Respectfully submitted,

COREY WRIGHT
Of Counsel

/s/
David M. Good
Virginia State Bar No. 44107
Attorney for Corey Wright
David Michael Good, P.C.
249 Central Park Avenue, Suite 300-247
Virginia Beach, Virginia 23462-3099
Telephone: (757) 306-1331
Facsimile: (888) 306-2608
E-mail: dgood@dgoodlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of October 2024, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to all counsel of record.

And I hereby certify that I will send a copy of the foregoing to the following non-filing user:

> Samantha Bean
> United States Probation Officer
> 600 Granby Street, Suite 200
> Norfolk, Virginia 23510
> (757) 222-7312

/s/
David M. Good
Virginia State Bar No. 44107
Attorney for Corey Wright
David Michael Good, P.C.
249 Central Park Avenue, Suite 300-247
Virginia Beach, Virginia 23462-3099
Telephone: (757) 306-1331
Facsimile: (888) 306-2608
E-mail: dgood@dgoodlaw.com

**Prepared by David Michael Good, P.C.**